Avery, J.
After an examination of the bill of exceptions, the court has come to the conclusion that enough is shown in it, to give jurisdiction of the case, and to warrant an inquiry into the several matters discussed in the argument.
There is no denial of the right to recover in the ejectment, if the tax sale did not pass the title.
The counsel for the defendant in error alleges that the purchaser at the tax sale acquired no title, for the following reasons:
*325 “ I. The law did not authorize the officers of Logan county to sell land in Hardin, which, for ‘ purposes of taxation,’ was ‘ attached ’ to Logan.
“ II. " If a sale was authorized because Hardin was ‘ attached ’ to Logan, then being but one county, no greater rate of taxes could be levied than by law was authorized upon the ag gregate duplicate footings of the two counties, which was done, and so the sale was void.
“ III. There is no legal duplicate of taxes for 1830 and 1831, with duplicate footings signed and certified by the audit- or, with columns stating separately the taxes of 1830 and 1831, or even purporting to include delinquent taxes. The duplicates of 1830 and 1831, do not state the accurate amounts of .the several kinds of taxes in separate columns.
“ IV. The list of lands delinquent for 1830, returned by the treasurer to the auditor, is invalid, because: First, it was not returned on the first Monday in January, but on the 13th; Second, the settlement between the auditor and treasurer was not made on the same first Monday; Third, the treasurer’s oath to the delinquent return, though subscribed by him, is not certified by the auditor, and is dated January 13, 1830 —long before he even received the duplicate; Fourth, the delinquent return does not show any reason why this land was returned delinquent.
“ V. The record of the published notice of the tax sale -is insufficient: First, it does not designate the several kinds of taxes, nor the taxes of each year, separately, nor is the list certified and signed; Second, it. does not show a legal publication,-reciting only ‘four weeks according to law;’ Third, the auditor’s name is signed to it in the handwriting of another person ; and finally, it does not purport to be copied from the published newspaper notice.
“ VI. The record of the tax sale is not certified or signed by the auditor.
“ VII. The tax deed was executed without the production of a certificate of sale or survey. No survey is found in the *326 surveyor’s book ; nor is the existence or loss of such certificate and survey proved.”
The counsel urge that the law gave no authority to the officers of Logan to sell lands in Hardin; but supposing it to have conferred such power, that then both must be regarded, “ for the purposes of taxation,” as one county, and the valuation upon the tax list of the counties united, must form the basis of the per centum to be levied! The law in this particular, it is said, has not been pursued by the county officers.
In order to determine the force of this objection, it will be necessary to look at some of the sections in several of our statutes ; these we proceed to examine:
On the 12th of February, 1820, an act of the state legisla ture was passed (3 Chase 2134) which provides in the first section, “ that all that part of the lands lately ceded by the Indians to the United States, which lies within this state, shall be, and the same is hereby erected into fourteen separate and distinct counties.” Hardin was one of the counties created by this section. As these newly made counties contained but a few inhabitants, they were attached to such other counties, already organized, as happened to be adjoining or near to them. By the second section of the act, Hardin was attached to Logan, which was then an organized county, having county officers - for the management of its concerns. At an early period provision was made by law, directing the mode of appropriating the money belonging to counties or districts attached. By the law of January 11, 1820, it was declared that while a new county should remain attached to an organized county, the expenses should first be paid from the whole tax, except appropriations for roads-, bridges, or public buildings. The act to amend “ the act establishing an equitable mode of levying taxes, passed January 17,1826,” (3 Chase 1517,) attached the county of Hardin to the county of Logan “ for all the purposes of taxation,” and the supplementary act, passed the next year, (3 Chase 1562,) limited the power of the county commissioners, in fixing the amount per centum which they might levy, and made the amount to *327 depend upon the aggregate value of all the property on the list for taxation. Their power was limited first with reference to the road tax by the following provision: “ When the aggregate amount of the value of all property entered upon the general list for taxation, shall be one million five hundred thousand dollars, or more, the road tax shall not exceed one mill upon the dollar, and when such amount of valuation shall be less than one million five hundred thousand dollars, such road tax shall not exceed three mills upon the dollar of such valuation,” and concerning the tax to be levied for county purposes, the act provides that “ when the amount of valuation shall five hundred thousand dollars or more, and less than one million of dollars, such tax shall not exceed three mills on the dollar, and when said amount of valuation shall be less than five hundred thousand dollars, such tax shall not exceed five mills upon the dollar of such valuation.” The question is now made upon the several statutes above referred to, whether the limit to the power of the county commissioners applies to counties attached, as well as to counties then acting separately; and we are of the opinion that the limit is the same in both cases, since the two counties make but one district for the purpose of taxation, their taxes being all levied and collected in common, and under the direction of but one board of commissioners. When the power of the commissioners is so limited, a tax of any greater amount is unauthorized and void. In every case where an individual tax is upon trial shown to be greater than the amount authorized, a sale of land for the payment of such tax, will be deemed void, and certainly a general tax must be void, when no power exists for levying it. It only remains to look at the proof and see if the present is such a case. The proceedings of the commissioners show that a tax of 41-mills was imposed for county purposes; the certificate of the auditor of Logan county shows that the valuation for the two counties’ for the year 1830 was upwards of $537,000. That it was over $500,000 is taken for granted in the argument. The tax, therefore, could not legally exceed three *328 mills on the dollar. As it was in this case 4-|- mills, the tax sale in controversy, and the deed made in pursuance of it, were void.
The determination of this point puts an end to any defense in the action of ejectment, by virtue of the tax purchase, and we have not thought it necessary to decide upon either of the other questions discussed.
The judgment in the common pleas was for the plaintiff in ejectment, and must, therefore, be affirmed.